# CURTIS, MALLET-PREVOST, COLT & MOSLE LLP

| | | | |
|---|---|---|---|
| ALMATY | KUWAIT CITY | | |
| ASHGABAT | LONDON | | |
| ASTANA | MEXICO CITY | ATTORNEYS AND COUNSELLORS AT LAW | TELEPHONE 212-696-6000 |
| BUENOS AIRES | MILAN | | FACSIMILE 212-697-1559 |
| DUBAI | MUSCAT | 101 PARK AVENUE | WWW.CURTIS.COM |
| FRANKFURT | PARIS | NEW YORK, NEW YORK 10178-0061 | |
| HOUSTON | WASHINGTON, D.C. | | |
| ISTANBUL | | | |

WRITER'S DIRECT:
TEL.: 212-696-6065
E-MAIL SREISMAN@CURTIS.COM

February 19, 2013

**BY HAND DELIVERY**

The Honorable Martin Glenn
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green, 5th Floor
New York, NY 10004

      Re: *In re Residential Capital, LLC, et al.*,
           **Bankruptcy Case No. 12-12020 (MG) (Bankr. S.D.N.Y.)**
           *Residential Capital LLC, et al. v. Allstate Insurance Company, et al.*,
           **Adv. Pro No. 13-01262 (MG) (Bankr. S.D.N.Y.)**

Dear Judge Glenn:

      This firm is conflicts counsel for the debtors and debtors in possession (collectively, the "Debtors") in the above-referenced jointly administered Chapter 11 cases (the "Chapter 11 Cases") and in the above-referenced adversary proceeding (the "Adversary Proceeding"). The Debtors seek permission to file a motion for summary judgment in the Adversary Proceeding, and, thus, in accordance with Rule 7056-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York, we write to respectfully request a pre-motion conference with the Court.

      Because the Adversary Proceeding presents no genuine dispute as to any material fact, it may be resolved as a matter of law and, therefore, is ripe for summary judgment.

**Background and Summary of Adversary Complaint**

      From 2004 to 2007, the Debtors issued residential mortgage-backed securities ("RMBS") in 392 separate private label securitizations with an aggregate original principal balance of more than $226 billion. Defendants AIG Asset Management (U.S.), LLC and affiliated entities, Allstate Insurance Company and affiliated entities, Massachusetts Mutual Life Insurance Company, and Prudential Insurance Company of America and affiliated entities (collectively, with defendant National Credit Union Administration Board ("NCUAB"), the "Defendants" or "Investors") collectively purchased $1.785 billion of the Debtors' RMBS. The NCUAB asserts that it holds over

13-01262-mg    Doc 2    Filed 02/19/13    Entered 02/19/13 18:36:02    Main Document
                                          Pg 2 of 5

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Attorneys and Counsellors at Law

Page 2

The Honorable Martin Glenn
February 19, 2013

$300 million in claims relating to the Debtors' securitizations. Together, the Investors have asserted proofs of claim arising from the purchase of securities ranging in seniority in terms of securitization tranches from Class A to Class M9.

On November 27, 2012, the Investors filed a motion in the Chapter 11 Cases, seeking entry of an order declaring that their securities claims arising from the purchase or sale of the Debtors' RMBS (the "Investor Claims") are not subject to subordination under Section 510(b) of the Bankruptcy Code [Docket No. 2284] (the "Motion"). Defendant NCUAB later filed a joinder to the Motion [Docket No. 2555].

The Debtors filed the adversary complaint (the "Complaint") to address the dispute underlying the Motion, because the appropriate procedural vehicle under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to subordinate a claim outside of a Chapter 11 plan, or to seek a declaratory judgment, is an adversary proceeding. *See* Bankruptcy Rule 7001(8) & (9). The Complaint seeks an order: (i) declaring that the Investor Claims, to the extent allowed,[1] are subordinated, pursuant to Section 510 of Title 11 of the United States Code (the "Bankruptcy Code"), to all general unsecured claims asserted against the Debtors' estates; and/or (ii) granting subordination of the Investor Claims.

**Issues to be Presented and Grounds for Relief**

The Debtors seek to file a motion for summary judgment on the grounds that the Investor Claims, to the extent allowed, should be treated as subordinated to the claims of general unsecured creditors pursuant to Section 510 of the Bankruptcy Code. Because the Debtors' arguments in this regard are set forth in depth in the Debtors' opposition to the Motion [Docket No. 2953] (the "Opposition"), we only briefly summarize the bases for these grounds below.

First, under Section 510(b) of the Bankruptcy Code:

> a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security.

11 U.S.C. § 510(b).

Here, as is apparent from the Motion, the Defendants do not deny that their claims arise from the purchase or sale of a security. The only basis the Defendants assert for avoiding Section 510(b) subordination is to argue that their securities are not "of" the Debtors or "of an affiliate" of the Debtors. Their argument fails, however, because the securities underlying their claims were created by the Debtors, marketed by the Debtors, and backed by assets originated or purchased and serviced by the Debtors. In short, the Debtors are the "issuers" of the RMBS in

---

[1] The Debtors reserve their rights to object to the validity, amount or classification of any Investor Claims on all grounds, whether legal, factual, procedural, substantive or non-substantive, including as to whether any Investor has standing to bring any or all of the securities claims that each is currently purporting to assert.

13-01262-mg    Doc 2    Filed 02/19/13    Entered 02/19/13 18:36:02    Main Document
                                          Pg 3 of 5

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
Attorneys and Counsellors at Law

Page 3

The Honorable Martin Glenn
February 19, 2013

every meaningful sense, and they are defined as such under applicable securities laws. Thus, there is no genuine material issue of fact that the securities are "of" the Debtors. In the alternative, if the Court finds that the RMBS are only "of" the trusts, the securities would be "of an affiliate" of the Debtors, because, at the time of the issuance of the RMBS and the time that the Investor Claims arose, the Debtors operated the RMBS trusts, or substantially all of the property of the RMBS trusts, pursuant to "Pooling and Service Agreements" that qualify as "operating agreement(s)" within the definition of "affiliate" contained in Section 101(2)(C) of the Bankruptcy Code. 11 U.S.C. § 101(2)(C).

Second, even were subordination not mandated by Section 510(b) (it is), subordination is also required under Section 510(a) in order to respect the certificateholders' contractually agreed-upon waterfall of payments among tranches of subordinated certificates.[2] That waterfall constitutes a subordination agreement that is enforceable under Section 510(a).

Third, not only is subordination required under Sections 510(a) and 510(b) of the Bankruptcy Code, it is the only fair and equitable outcome. As a result, "no fault" equitable subordination is also appropriate under Section 510(c) of the Bankruptcy Code. Contractual claims by the trustees on behalf of the RMBS trusts based upon alleged breaches of representations and warranties concerning the mortgage loans (collectively, the "Trust Claims") will be included within the pool of the Debtors' general unsecured claims. The certificateholders will each receive their pro rata portions of whatever recovery is thereby obtained by their trustees according to the priority scheme expressly agreed to among certificateholders within each securitization waterfall. Here, the Investors are seeking to recover for investment losses on many of the same certificates, based upon complaints of fraud that mirror the Trust Claims for breaches of representations and warranties. As a result, elevating the Investor Claims to the same priority afforded to general unsecured creditors will have numerous inequitable effects if those contingent and disputed litigation claims are ultimately allowed.

For example, proceeds available to pay general unsecured creditors will be divided among more claimants, thereby diminishing recoveries for all general unsecured creditors, except for current certificateholders with securities claims, who would receive two recoveries (one for their securities claim, and the other based on the Trust Claim brought by their trustee). In addition, equal priority of the securities claims with the Trust Claims would violate the express subordination agreements between junior and senior tranches of certificates because the junior certificates would recover on their securities claims on equal priority with all other general unsecured creditors, before more senior tranches are made whole. Moreover, failure to subordinate the securities claims would prejudice secondary purchasers of certificates. Under the PSAs, current certificateholders are entitled to receive the recovery for past losses. Absent subordination, the current holders' recovery from the Trust Claims would be diluted so that former certificateholders who sold the right to

---

[2] Indeed, subordination is a fundamental principle underpinning securitization and the entire purpose of the complex waterfall of payments to the different tranches of certificates. *See Wyo. State Treasurer v. Moody's Investors Serv., Inc. (In re Lehman Bros. Mortg.-Backed Secs. Litig.)*, 650 F.3d 167, 171 n.1 (2d Cir. 2011) ("Subordinating the bonds creates a tiered structure known as a 'waterfall.'"); *see also Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 244 (6th Cir. 2012) ("Often, a single trust issues different levels, or 'tranches,' of certificates, normally based on subordination rights . . . ."); *Anchor Sav. Bank, FSB v. United States*, 597 F.3d 1356, 1359 n.1 (Fed. Cir. 2010) ("Credit enhancement typically occurs through a 'senior-subordinated structure . . . .'").

13-01262-mg    Doc 2    Filed 02/19/13    Entered 02/19/13 18:36:02    Main Document
                                          Pg 4 of 5

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

Page 4

The Honorable Martin Glenn
February 19, 2013

recover past losses on the instruments could nevertheless share in the funds by virtue of the securities claims, thus depriving the secondary purchasers of certificates of the benefits of their bargain.

Accordingly, as explained in greater detail in the Debtors' Opposition, the Investor Claims are subject to subordination under any or all of Subsections (a), (b) or (c) of Section 510 of the Bankruptcy Code.

**The Issue Is Ripe for Summary Judgment**

Where, as here, the evidence is substantially uncontroverted, and there is no dispute of a material fact, summary judgment is appropriate. *See Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir. 2000). Here, the issue of subordination can be decided on the basis of the undisputed documents, which set forth the legal structure and the relative rights and roles of the parties vis-à-vis the RMBS securitizations. Indeed, the Defendants concede as much, by seeking their own determination of this issue through the Motion. As a result, the Adversary Proceeding, upon summary judgment briefing, will be ripe for adjudication as a matter of law pursuant to Federal Rule of Civil Procedure 56, made applicable here by Bankruptcy Rule 7056.

Accordingly, the Debtors respectfully request a pre-motion conference at the Court's earliest convenience so that they may seek permission to file a motion for summary judgment.

Thank you for your consideration.

Respectfully submitted,

/s/ Steven J. Reisman
Steven J. Reisman

cc: Gary S. Lee, Esq. (*via* e-mail: glee@mofo.com)
Joel C. Haims, Esq. (*via* e-mail: jhaims@mofo.com)
 (Morrison & Foerster LLP)
Tammy Hamzehpour, Esq. (*via* email: tammy.hamzehpour@gmacrfc.com)
 (Residential Capital, LLC)
Daniel L. Brockett, Esq. (*via* email: danbrockett@quinnemanuel.com)
Susheel Kirpalani, Esq. (*via* email: susheelkirpalani@quinnemanuel.com)
Eric D. Winston, Esq. (*via* email: ericwinston@quinnemanuel.com)
Jeremy D. Andersen, Esq. (*via* email: jeremyandersen@quinnemanuel.com)
Jennifer Barrett, Esq. (*via* email: jenniferbarrett@quinnemanuel.com)
Maria Ginzburg, Esq. (*via* email: mariaginzburg@quinnemanuel.com)
 (Quinn Emanuel Urquhart & Sullivan, LLP)
Kenneth H. Eckstein, Esq. (*via* e-mail: keckstein@kramerlevin.com)
Greg Horowitz, Esq. (*via* e-mail: ghorowitz@kramerlevin.com)
 (Kramer Levin Naftalis & Frankel LLP)

14219259

CURTIS, MALLET-PREVOST, COLT & MOSLE LLP
ATTORNEYS AND COUNSELLORS AT LAW

The Honorable Martin Glenn
Page 5                                                                                    February 19, 2013

Laura E. Neish, Esq.  (*via* e-mail:  lneish@zuckerman.com)
Nelson C. Cohen, Esq.  (*via* e-mail:  ncohen@zuckerman.com)
Graeme Bush, Esq.  (*via* e-mail:  gbush@zuckerman.com)
   ( Zuckerman Spaeder LLP)
Theresa A. Foudy, Esq. (*via* e-mail:  tfoudy@curtis.com)
Maryann Gallagher, Esq. (*via* e-mail:  mgallagher@curtis.com)
   (Curtis, Mallet-Prevost, Colt & Mosle LLP)
Brian Masumoto, Esq. (via e-mail:  Brian.Masumoto@usdoj.gov)
   (Office of the United States Trustee)
All Parties on the Special Service List in the Debtors' chapter 11 cases

14219259